(20 App. Div. 92.)

MILLEN v. NEW YORK CENT. & ·H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. July 29, 1897.)

MASTER AND SERVANT—RAILROADS—DANGEROUS PREMISES.

Defendant railroad company permitted an open sluiceway, about 10 inches deep and 14 inches wide, to run through its yards, where much coupling was done. The sluiceway was necessary, and the leaving of them open. was extensively practiced by defendant and other roads. One of its road masters testified that they could be easily covered, and that they would then be safer. Plaintiff, a brakeman, while coupling cars at night, and in ignorance of the sluiceway, slipped into it, and was injured. *Held*, that a verdict for plaintiff would not be disturbed.

Appeal from trial term, Onondaga county.

Action by Charles E. Millen against the New York, Central & Hudson River Railroad Company. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Affirmed.

Argued before HARDIN, P. J., and ADAMS, GREEN, and WARD, JJ.

Frank Hiscock, for appellant.
Julie R. Jenney, for respondent.

HARDIN, P. J. On the 31st of December, 1891, the plaintiff had been in the employ of the defendant, as brakeman, for 15 days, and on the evening of that day he was the rear brakeman or flagman upon a local pick-up train, making its way from East Syracuse to Utica as a pick-up train, and from Utica to Albany as a through train. When the train reached Oneida, there was occasion to leave some cars, and the usual process of kicking the cars onto a siding was gone through with by the trainmen, and then it was their business to pick up some stationary cars, and put them into the train, in the discharge of their duties. It is alleged in behalf of the plaintiff that, having placed a link in the drawhead of a standing car, he proceeded, in pursuance of the duty imposed upon him, to signal the engineer to move back certain cars from the east towards the west, with a view of uniting them with the still car; and, after giving the signal to the engineer, he approached the opening between the still car and the cars approaching under the motion given to them by the engineer, in pursuance of the signal, and that, as he entered between the two cars to complete the connection of the moving cars with the dead car, by adjusting the link and pin, he slipped, and lost his balance, plunged forward, caught his hand between the drawheads or the deadwoods, and received the injuries which occasioned him to lose most of his right hand.

There was a controversy at the trial as to the precise location of the attempted connection of the two cars. The evidence given by the plaintiff as a witness and by other testimony relating to that question was quite seriously contradicted by the testimony of the witness Newman, and the trial judge clearly and pointedly submitted the conflict raised as to the evidence offered by the plaintiff and the evidence furnished by the defendant, and the verdict has settled that question of fact, upon sufficient evidence, in favor of the plaintiff.

The next important question of fact which was presented for the

consideration of the jury was as to the nature and character of the sluiceway, ditch, or trench which, according to the evidence of the plaintiff, was left by the defendant in its yard where the coupling was required to take place, and into which the plaintiff alleges that he slipped or stepped and caught himself, and, by means of the slipping, the injuries were occasioned, and "his fingers smashed between the drawheads." In behalf of the plaintiff it was shown that the sluiceway was an opening of from 8 to 10 inches deep, and some 14 inches wide; that the night was dark; and that the hour when the accident occurred was between half past 7 and 8 on the night of the 31st of December, 1891, there being some snow and slush upon the ground. The evidence offered by the plaintiff tended to support the allegation that, by reason of the sluiceway or ditch, the plaintiff lost his balance, and received the injuries of which he complains. It was clearly and pointedly submitted to the jury to find whether the sluiceway caused the injury of which he complains, and their verdict in that regard, favorable to the plaintiff, is supported by ample evidence. The sluice or ditch was uncovered, and the defendant sought to exculpate itself from the charge of negligence by producing evidence to the effect that the sluiceway was constructed for a proper purpose, and that its construction was in accordance with an extensive practice on its road and on other roads. Considerable evidence supporting the averment in that direction made by the defendant was received, and submitted to the jury for their consideration. The learned trial judge instructed the jury that it was the duty of the defendant to furnish a reasonably safe place to the plaintiff for the discharge of the duties imposed upon him, and left the question of fact in that regard to the jury. Upon that question, the fact that the yard consisted of seven tracks, and the darkness of the night, the slush and snow, the nature of the duty imposed upon the plaintiff, and all the circumstances relating to the employment of the plaintiff and the facilities furnished by the defendant in respect to the place where he was to discharge the difficult and dangerous duty of coupling cars, were adverted to in considering that question when the case was submitted to the jury. The jury were specifically instructed that, if no negligence was found on the part of the defendant in regard to the sluiceway, then there could be no recovery. If, on the other hand, they reached the conclusion, upon all the evidence, that the sluiceway or ditch rendered the place where the labor of the defendant was to be performed unsafe and dangerous, then their verdict might be that the defendant had failed to discharge its duty in the premises. Apparently, the court gave the defendant the benefit of every branch of its evidence, and of all the circumstances which made in its favor, upon all the important questions of fact that were presented to the jury; and the jury were expressly instructed that upon all the evidence, before the plaintiff could recover, it must be found that the plaintiff was free from contributory negligence. We are of the opinion that the trial proceeded upon well-settled principles of law, and in accordance with the doctrine laid down in reported cases.

In Plank v. Railroad Co., 60 N. Y. 607, the plaintiff's evidence tended to show that:

"As deceased was engaged in the act of coupling, he stepped into a sluice-way or trench, about two feet wide and deep, which ran under the tracks. * * * It was in the night season, and there was snow on the ground. It also appeared that the train of the deceased had been in the habit of stopping there, and that he knew of the trench. The trench, it appeared, had been there over ten years, in the same condition."

And in delivering the opinion, to the effect that the nonsuit granted was erroneous, it was said:

"That defendant was bound to provide an ordinary and reasonably safe place for the performance of the work of coupling cars. That the jury might have found that the plank across the trench was not a safe or convenient standing or walking place for one engaged in that work, as it was midway and right under the attachment by means of which the cars were coupled, and that the trench made the place unsafe to a brakeman whose hands and eyes were engaged in the act of coupling. * * * And that the evidence of defendant's negligence was sufficient to require the submission of the question to the jury. Also, that the fact of the knowledge of the deceased of the existence of the trench was not sufficient to charge him, under the circumstances, with contributory negligence, as the act in which he was engaged necessarily required his whole attention and thought."

In Harr v. Railroad Co., 13 N. Y. St. Rep. 227, affirmed 21 N. E. 425, it appeared that the accident occurred while plaintiff was "endeavoring in the night to couple cars, and was walking between or beside the cars in motion, which he was attempting to couple when he slipped and fell." In the opinion delivered in the general term, numerous cases are referred to and cited in harmony with the Plank Case, and the opinion then delivered was expressly approved by the opinion delivered in the court of appeals.

The doctrine of the Plank Case was again approved in Fredenburg v. Railroad Co., 114 N. Y. 582, 21 N. E. 1049, and it was there said that it was the duty of the defendant "to use care to make the place reasonably safe for its employés"; and in that case the following language is found:

"It is urged that the plaintiff was bound to make himself acquainted with the situation presented by the various structures about the yard and their condition. It is quite true that his duty was to use due diligence to familiarize himself by observation with the structures and their situation and condition in the yard, with a view to his own safety in the performance of his duty, and for the protection of himself against injury. But his recent entrance into the service, and the fact that his duties hitherto had not called him to the place in question, enabled the jury to find that his failure to escape the injury was not attributable to any want of diligence on his part in that respect."

In the case in hand the evidence is that the plaintiff had been in the employ of the defendant only 15 days, and, while he had been through the Oneida yard several times, there is direct and positive testimony that he was not aware of the sluiceway where he alleges the injuries were received; and the evidence warranted the jury in finding that he had no knowledge of the presence of the sluiceway and the dangers incident to its presence in the yard where he was required to couple cars. In support of the theory of the defendant, it called two of its road masters, who gave evidence as to the existence of similar structures along its roadway.

Road Master Angell testified:

"I know of nothing which prevents the covering of those sluiceways. It would be very easy to cover them, and from my judgment as a road master, from long experience, they would be safer if they were covered."

Road Master Winfield testified that he had seen sluiceways and drains covered, and some uncovered. He also testified, viz.:

"If there was an eight-inch ditch right where a man was coupling cars, I don't know whether I would regard it safer to cover it if a man was working there in the nighttime or not. He would be as liable to stumble over a box as he would to drop in a ditch. If the box was under the rail and on a height with the level of the yard, he would not be liable to stumble very much. There would be an opening there. * * * He would be about sixteen inches away from the track, but, so far as being in between the rails is concerned, he would be safer if that sluiceway was covered. * * * Where they are covered, they are made with boxes put in underneath."

According to the evidence, this yard had in and about it seven tracks, and there was occasion to couple and uncouple cars in and about this yard to a very large extent.

We think the evidence was sufficient to warrant the conclusion reached by the jury that the defendant was guilty of negligence, and that the negligence of the defendant contributed to or led to the injuries which the plaintiff received, and that the evidence fully warranted the trial judge in submitting the question of the plaintiff's freedom from negligence, as one of fact, to the jury. There was no error, therefore, in the trial court in refusing to nonsuit the plaintiff at the close of his evidence, nor in again refusing to dismiss the plaintiff's complaint, and to grant a nonsuit at the close of the whole evidence.

The learned counsel for the defendant has called our attention to De Forest v. Jewett, 19 Hun, 509. That case differs from the one before us inasmuch as the trial judge there, in effect, charged the jury that the defendant was liable for any error of judgment, although it exercised due care in determining the mode of constructing the ditch. That case was affirmed in 88 N. Y. 264, and in the course of the opinion it was said:

"He had been engaged as switchman and car coupler in the yard in question for nearly two years. He worked in the daytime. It appears that every one of these ditches or sluices were well known to him. He knew their location, and, so far as could be determined by seeing them daily, he knew their width and depth, and the manner of their construction. Whatever there was of danger to one engaged in the coupling of cars in this yard must have been apparent and obvious to him. This is not a case, therefore, of a latent or secret danger unknown to the servant, but which should have been known to the master."

The case differs from the one before us, because there is positive evidence in this case, as well as a verdict in favor of the evidence, to the effect that the plaintiff did not know of the ditch or sluice at Oneida where he received the injuries.

Nor do we see anything in Harley v. Manuf'g Co., 142 N. Y. 32, 36 N. E. 813, which sustains the position of the defendant. In that case it was said that the master "is not bound to furnish them [employés] an absolutely safe place to work in, but is bound simply to use reasonable care and prudence in providing such a place."

The tenor and spirit of the charge of the learned judge are entirely

in accord with that doctrine, and it must be assumed here that the verdict is in accord with the principle laid down in that case.    And the verdict seems to accord with the testimony of Road Master Angell, who said: "It would be very easy to cover them, and from my judgment as a road master, from long experience, they would be safer if they were covered."    This case differs from Wright v. Canal Co., 40 Hun, 343, as there it appeared very clearly that the defect which was complained of was known to the plaintiff, "and no complaint was made by him, or notice given of the alleged defect."

Some criticism is made of some of the language used by the learned trial judge in his charge to the jury, and it is intimated that it was "an eager and earnest summing up for the plaintiff; practically a direction to the jury to give the plaintiff a verdict."    Upon looking at the portion criticised, we are of the opinion that the learned trial judge sought to illustrate the issue to the jury, and to give them a clear understanding of the rules of law which he had laid down to guide them in their deliberations upon the facts of the case.    The exception that was taken was broad and general, and does not point out that the charge "erroneously expresses any rule of law."    Besides, after the language which is adverted to in the criticism was used, the trial judge very squarely put it to the jury to determine—First. Was the plaintiff guilty of contributory negligence?    And, second, was the accident caused by the sluiceway?    Was the defendant guilty of negligence in permitting the sluiceway there to remain?    We think, after reading the whole charge, the jury were very properly instructed as to the rules of law applicable to the facts before them.    Smith v. Matthews, 152 N. Y. 157, 46 N. E. 164, and cases cited in the opinion of Bartlett, J.    If the jury could have been induced to believe the testimony of Newman, the defendant's witness, the defense might have succeeded.    However, as there was satisfactory evidence to the contrary of the testimony given by him, the verdict must be accepted as conclusive.

Judgment and order affirmed, with costs.    All concur.