WEST v. SOUTHERN PAC. CO.

(Circuit Court of Appeals, Eighth Circuit. February 7, 1898.)

No. 970.

1. MASTER AND SERVANT—RISK ASSUMED.

A brakeman, who accepts employment and continues in the service of a railroad company, knowing that its culverts are all uncovered, cannot recover for injuries caused by falling into a culvert of which he did not know, while alighting from a train to set a switch, unless the company was negligent in directing or inviting him to so alight.

2. SAME—PLACE OF WORK—VIOLATION OF RULE.

A railroad company is not liable to a brakeman for injuries caused by his falling into an open culvert in alighting from a train to turn a switch,

a long distance from the place assigned by the company for such service, and when he knew such train was taking the side track at the opposite end from that required by the printed rules of the company.

## In Error to the Circuit Court of the United States for the District of Utah.

This is an action for personal injuries, and arises out of the following state of facts: In August, 1893, the plaintiff was a brakeman on one of defendant's freight trains running between Carlin, in the state of Nevada, and Terrace, in the state of Utah. The train was going east. At the station known as Moline there was a side track, with switches at the west and east ends. The rules of the company, which were printed, and with which the plaintiff was familiar, required that, in approaching such switch from the west, this freight train should pass onto the side track through the west switch, so as to give the right of way to a west-bound passenger train due at Moline within a few minutes after the arrival of the freight train. This requirement was essential to prevent a collision in the event of the freight train undertaking to accomplish the side-tracking by first passing through the eastern switch, and then backing onto the side track. The plaintiff's testimony showed that, while he was aware of this rule, the trainmen had for some time been in the habit of effecting the entry by passing through the eastern switch, and then backing onto the side track. On the occasion in question it reached the side track in the manner just stated. The plaintiff, as the rear switchman, was in the habit of passing from the rear step of the caboose, after the train cleared this switch, in order to throw the switch for the train to back in onto the side track. On this occasion he did not leave the step of the caboose just as the train passed the switch, but, as the train ran unusually far beyond the switch, he did not step off until he reached a point 281 feet east of the switch. It was then about 11 o'clock p. m., and the night was somewhat dark. He had his signal lantern in his hand, which, in descending from the car, would cast its light on the ground, although the plaintiff claims that he exercised circumspection before stepping off. At this point there was a culvert, about four feet deep and about the same width, with lateral walls of stone, placed there by the company to carry off the water which might accumulate against the embankment constructed at this point. This culvert was uncovered, and in alighting from the caboose the plaintiff stepped into the culvert, and received an injury to his kneecap and further bruises.

The negligence imputed to the railroad company, as the basis of recovery, is charged in the petition as follows: "That it was the duty of defendant to provide and maintain suitable covers or guards for all of its culverts under its roadbed which might be in the vicinity of any side track or switch on its road: but that, in violation of its said duty, the defendant constructed and maintained an open or uncovered culvert near the end of the side track at Moline, at a point where it became necessary for the plaintiff to step off from the said freight train in order to turn the switch and permit the freight train to go upon the said side track, as so ordered by the defendant; and in so doing, and in ordering the plaintiff to perform such duty where such uncovered culvert was situated, the defendant conducted itself carelessly, negligently, and unskillfully, whereby," etc.

The evidence showed, without contradiction, that on this road, between the points over which the plaintiff ran as brakeman, and over which he made trips every two or three days for three years past, there were 292 culverts, none of which was covered. It is true the plaintiff testified that he had seen one covered culvert, but when and where he could not state. It was the custom of the company to so construct its culverts, and such method was deemed by its engineers and track builders to be proper and safe. At the time of this injury the plaintiff had been in the employ of the defendant as brakeman on this line of road for three years. He knew the culverts were uncovered, although the evidence does not show that, prior to this accident, he knew of the exact locality of this particular culvert. On this evidence the court directed a verdict for the defendant. To reverse this judgment the plaintiff prosecutes a writ of error.

James H. McMillan (Charles C. Richards and Arthur E. Pratt, on the brief), for plaintiff in error.

Thomas T. Fauntleroy (Marshall F. McDonald and John T. Cochran, on the brief), for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and PHILIPS, District Judge.

PHILIPS, District Judge, after stating the case as above, delivered the opinion of the court.

The plaintiff cannot be heard to complain of any supposed neglect of the company in constructing its culverts without coverings. When he accepted service as a brakeman on this road, he knew of this condition of the culverts. For three years he continued in such service, with full knowledge of the fact, without objection. In this respect the rule "volenti non fit injuria" applies. The servant is free to accept or refuse employment on a roadway of a particular construction. If he accepts such employment, and continues therein, as in this case, with full knowledge of the structures, without objection, the language of the court in Lovejoy v. Railroad Corp., 125 Mass. 79, is quite applicable:

"The abutments of 46 bridges, numerous buildings, entrances to stations, and other structures on the line of the defendant's road, were the same distance from the track. These facts were known to the plaintiff, though he testified that he had not, previously to his alleged injury, noticed this particular post. The only negligence imputed to the defendant was in placing this post so near the track. As between the plaintiff and the defendant, it was immaterial whether it would have been more prudent to have placed the signal posts, abutments of bridges, and other structures, so numerous on the line of the defendant's road, more than 3 feet 8 inches from the track. If there was any danger to the plaintiff, while in the performance of his duty, from the structures thus placed, it was a risk that he had assumed. He knew the manner in which the road was constructed, the proximity of the track to these structures, and the method employed in the management of the trains. The defendant had the right to construct its road and conduct its business in this manner, and, as was said in Ladd v. Railroad, 119 Mass. 412, is not liable to one of its servants, who is capable of contracting for himself, and knows the danger attending the business in the manner in which it is conducted, for an injury resulting therefrom."

The real question for decision is, was it actionable negligence for the railroad company to leave the culvert uncovered at the point of this accident? The law imposes upon the master the duty of exercising reasonable care to provide his employé a reasonably safe place at which he is required to work. At and about a switch, where a brakeman may be expected to alight from the train for the purpose of turning the switch, the company may be held liable for an injury to the brakeman occasioned by the proximity of a pitfall like an uncovered culvert, the presence of which is unknown to the employé at the time, or where the dangerous pitfall or hole, although exposed to view, so that the workman, if thoughtful and observant, might see and avoid it, yet, by reason of his intentness upon the immediate work in which he is engaged, his attention for the moment is diverted.

The cases principally relied on by counsel for plaintiff (Millen v. Railroad Co. [Sup.] 46 N. Y. Supp. 748; Slauson v. Railway Co., 60 N. Y. 608; Railway Co. v. Teeter, 27 U. S. App. 316, 11 C. C. A. 332, and 63

Fed. 527; Franklin v. Railway Co. [Minn.] 34 N. W. 898) presented a state of facts from which it appeared that the immediate vicinity of the place where the servant was called upon by the employer to perform his work was so near to some hidden hole or opening or obstacle as to expose the servant to the danger of stepping into the one or coming against the other, or presented the instance, just above alluded to, where the dangerous opening or obstacle was not observed by the employé on account of his attention for the instant being diverted to the execution of the work in which he was engaged.  But such is not the case presented by this record.  The culvert in question was 281 feet from the switch.  It was not, within the meaning of the rule, in the vicinity of the point where the defendant company had assigned the plaintiff to work.  By express rule, known to the plaintiff, the defendant had enjoined upon the trainmen that, in reaching the side track at Moline from the west, they should pass onto the side track by throwing the switch at the west end of the switch limits.  The switch where the defendant had by its rule assigned this plaintiff to work was at the west, where no such accident would have befallen him.  He knew, from the rule of the company, that the eastern switch was not designed nor intended to be used by the company in backing east-bound trains through it onto the side track.  He knew that the trainmen, in thus reaching the siding, were acting in violation of the explicit published rule of the company.  And while he is not to be held responsible for the misconduct in this respect of the conductor or engineer, he never protested against this infraction of the rule, nor advised his employer thereof.  For the use designed by the company of the eastern switch, no probable responsible hazard on the part of the defendant could be incurred by this brakeman on account of the uncovered culvert 281 feet east of the switch.  This is so, for the obvious reason that the duty of turning the switch for the admission of a west-bound train to the side track would devolve on the brakeman nearest the front of the train, when, presumptively, the engine having halted near the switch, the brakeman would dismount from the train at a point far within the bounds of 281 feet.

If a liability is to attach to the company because of the unusual and not to be reasonably anticipated incident of this brakeman undertaking to step off the train 281 feet from the switch which he was to operate, simply because the train did not stop nearer the switch, where is the line of accountability on the part of the company to be drawn?  There would be just as much reason and justice in authorizing a recovery, had the train gone 1,000 feet further to the east than was necessary, and the defendant had undertaken to step therefrom and fallen into a culvert. Where, as in this case, the uncovered pitfall was so far beyond the place where the injured party was assigned by his master to work as to admit of no divided opinion among reasonable men as to its being beyond the reasonable vicinity of the place for the performance of the required work, the question of fact passes out of the exclusive domain of a jury, and becomes solely a question of law for the determination of the court. The judgment of the circuit court is therefore affirmed.