### KANSAS & T. COAL CO. v. REID.

(Circuit Court of Appeals, Eighth Circuit. March 21, 1898.)

#### No. 991.

DAMAGES—LIABILITY OF EMPLOYER—NEGLIGENCE.

Where a workman is employed to assist in pushing empty coal cars to the desired position for loading coal, and also, after an empty car has been started down the incline towards the dump, to go ahead to a stationary engine, and start it by the time the car comes under the chute, a direction from the foreman to "Go ahead, and start the engine" does not justify him in passing in front of the car, when he could pass to the rear onto a platform, and so avoid the danger; and in so doing he is negligent, and cannot recover for an injury received in consequence thereof.

In Error to the United States Court of Appeals in the Indian Territory.

Adiel Sherwood, for plaintiff in error.
Ira D. Oglesby, for defendant in error.

Before SANBORN, Circuit Judge, and PHILIPS, District Judge.

PHILIPS, District Judge. This is an action for personal injuries, instituted by defendant in error, hereinafter called the "plaintiff," against the plaintiff in error, hereinafter called the "defendant," in the United States court for the Central district in the

Indian Territory.    Plaintiff below recovered judgment for the sum of $5,000, which was affirmed by the court of appeals for the Indian Territory.    To reverse this judgment the defendant sued out a writ of error from this court.

The defendant, a mining corporation, owned and operated a mine in said territory, known as the "Braidwood," or "Pocahontas," mine, in 1895.    At said mine the defendant, for the purpose of loading coal into railroad cars, had an overdump and hoisting apparatus, with a screen, operated by a small engine, through which the coal passed into a chute and into the car under this chute. There was a platform extending from beneath this top-work, running west, about 60 feet long, and on an elevation towards the eastern end of this platform stood said engine.    Beginning a few feet west of the engine, the platform was about 4 feet above the surface of the ground, and increased in height with the elevation of the ground until at the western end it was about 5 feet high.    Parallel with this platform ran a railroad track, used for switching railroad cars, to run them under said dump or chute for the purpose of loading.    The inner, or southern, rail of this track was near to the platform, allowing room for the car to pass without striking the platform.    For the purpose of loading the cars with coal, there was another track, called the "slack track," north of, and almost parallel with, the track running along the platform, over which the empty cars were pushed by hand from the main track of the railroad onto a Y, to a point about 100 feet west of the platform, and were then pushed in the same manner east, onto the first-named track.    From the westernmost end of this side track, towards the platform, it was an upgrade, until a point was reached about 40 feet, perhaps, from the western end of the platform, from which point to the dump there was sufficient descent to enable the cars to run down of their own momentum.    At the time of the injury in question the plaintiff was in the employ of the defendant, whose duty it was to assist in pushing, and putting in the desired position, the cars as above described.    It was also his duty, after the empty car had been started down the incline towards the dump or chute, to get upon the platform, and reach the engine, to start it in motion by the time the car reached the proper position under the chute. This engine was very simple in its method of operation, and was put in motion by opening the valve.    On the occasion in question the plaintiff was assisted by one William Eagly, who was the acting foreman or superintendent of the mine, and one John Wright, an employé of the defendant of the same grade as plaintiff.    After the car had reached the summit on the side track leading to the dump, so it could run down without the assistance of the plaintiff, Eagly said to him, "Run ahead and start the jigger engine" (by which name said engine was known among the employés); or, as some of the witnesses put it, "Go ahead, and start the engine."    Thereupon the plaintiff went forward between the two tracks at a pace sufficient to get about 30 feet in front of the car, and attempted to reach the platform by crossing the track in front of the descending car, and, when he undertook to raise himself from the ground onto the plat-

form, he placed his foot on the end of a projecting plank, partly concealed by coal dust, from which his foot slipped, and before he could sufficiently recover, in time to entirely reach the top of the platform, the descending car came along, and caught one of his feet between the platform and an upright standard on the side of the car, whereby his foot was considerably injured.

This case presents a striking illustration of the vice of trying and determining a cause on a rigid theory, rather than the facts of the particular case. The able counsel who brought this action comprehended the legal obstacles to a recovery by an employé against the master for injury sustained in performing work of a hazardous nature in the line of his undertaking, where the danger of executing a given order was as obvious to the servant as to the overseer. The original petition alleged as the ground of recovery that while the plaintiff was engaged in the line of duty in pushing the empty car, "when said car was moving slowly, he was ordered, commanded, and directed by the defendant to run in front of the said moving car and start a screen engine, etc., and in obeying said command he was forced and compelled to go in front of said moving car on said track, and climb on said platform to start said engine, and while he was crossing said track and trying to get on said platform, being ignorant of the danger, and relying on the superior knowledge of the defendant, and also upon the defendant controlling said car, so as to give plaintiff time to obey the command, and get upon the platform out of the way of said car, plaintiff's foot was caught between said moving car and said platform; * * * that at the time of the said injury he was not employed to run, and it was not his duty to run, said screen engine." Apprehensive, doubtless, that it might be held to have been inexcusable foolhardiness in the plaintiff to run immediately in front of a known moving car, and undertake to get out of the way by mounting a platform four feet high, plaintiff's counsel, before the trial, amended the petition, inserting after the words, "and trying to get on said platform," the following: "Being ignorant of the danger, and relying on the superior knowledge of the defendant, and also upon defendant controlling said car, so as to give plaintiff time to obey the command, and get upon the platform out of the way of said car,"—and by inserting after the words, "screen engine, and whose orders plaintiff obeyed," the following: "And in not controlling said car, so as to give plaintiff time to obey said order." And it was upon the facts thus predicated that the court laid the principal stress in its instructions to the jury. The actual facts were, as disclosed by the evidence, that plaintiff had more practical knowledge of the situation than the foreman. For years he had worked about this coaling station, and was familiar with its tracks and said platform. He had for weeks prior to the accident been employed in the special work of assisting in transferring cars under the coal chute, and in going to the engine on the platform to start it after the car began its descent down the grade. He knew as much as anybody the momentum of such a car in passing along the platform, and how the car was managed in its descent. He was familiar with the elevation of the

platform and the manner of reaching it from the ground. He had often performed the work of leaving the car as it started down the incline, and reaching the engine to put it in motion for the purpose aforesaid. He knew the customary method of accomplishing this work. The evidence was that the usual course in reaching the platform was by either passing to the rear of the moving car, and climbing onto the platform, or by getting on the rear end of the car, and stepping therefrom to the platform, and then hurrying on to the engine.

What was there in the order given by Eagly on this occasion different from what he had previously given? There is nothing in the record from which it can be affirmatively inferred that any set phrase had been employed previously by the foreman or superintendent to indicate how the plaintiff should reach the engine after he quit pushing the car. All that is claimed to have been said by Eagly was, "Run ahead and start the jigger engine;" or, as some of the witnesses stated it, "Go ahead, and start the engine." As the path he should travel, or manner of reaching the engine, was not indicated by the order, further than that plaintiff should go ahead for that purpose, the clear import was that he should reach his engine, so as to put it in motion by the time the car reached its position under the coal chute. There was no order or direction to run in front of the car. The order could have been as well executed in the customary manner by passing to the rear of the car, and mounting the platform, or by getting on the rear end of the car, and stepping from it onto the platform. By either of the latter methods he could as easily and timely have reached the engine by outrunning the car as by the course he adopted of outrunning the car so as to pass in front of it. The danger of the course he took was just as obvious to him as to the foreman. Not only was this true, but he was especially familiar with the difficulties of reaching the engine, and how it was to be accomplished in going the way he did. No rule of law is better settled than that the master is at liberty to conduct his business in his own way, notwithstanding there may be other less hazardous methods. And he may be responsible for injuries resulting from exposing a novice to hazard in working at a particular place without warning, or when such novice, by reason of age or lack of knowledge, is unduly ordered into a position of danger. But, when the servant "knows the danger attendant upon such manner of prosecuting the work, he assumes the risk of the more hazardous method." Reed v. Stockmeyer, 20 C. C. A. 381, 74 Fed. 188; Tuttle v. Railway Co., 122 U. S. 189, 7 Sup. Ct. 1166; Railway Co. v. Seley, 152 U. S. 145, 14 Sup. Ct. 530. Where the servant possesses the actual knowledge of the risk, obtained both before and during his engagement of service, he is not merely required to exercise greater vigilance to avoid the danger, but he assumes the risk. Peirce v. Clavin, 27 C. C. A. 227, 82 Fed. 550.

The only answer made to this by plaintiff's counsel is that there was evidence on which the jury might reasonably have inferred that the foreman, Eagly, saw the course the plaintiff took to reach the platform, and, as he did not warn him to stop, the plaintiff was justified in proceeding under the impression that the foreman would take such

means at his command as would prevent the car from running the plaintiff down while attempting to reach the platform.    There are several conclusive replies to this contention.    In the first place, the plaintiff was familiar with the manner in which the car was managed in its descent.    He knew that the custom was for one of the attendants, when the car started down the incline, to get on the rear end, where the brake was, for the purpose of setting the brake in time to stop the car when it reached the proper position under the chute. He knew that, as that was the usual office of the brakeman, the latter's attention would be wholly engaged in ascertaining when to put on the brake to effect the arrest of the car.    He testified that just as he started on his run he heard Eagly give the assistant, Wright, the usual direction to get on the car.    As he heard no other direction, he had no right to expect of this brakeman the performance of any other duty, or to keep any other lookout, than such command indicated, or the usual course of action warranted.    Second, under such circumstances, there was more reason for the foreman to assume that, as plaintiff was well acquainted with the office of the brakeman and the situation, he was not proceeding in reliance upon the foreman taking care of him as if he were a child or an imbecile.    The foreman had a right to assume that the plaintiff, in voluntarily assuming that course to reach the engine, knew how to take care of himself.    He had a right to assume that, conscious of his danger, and familiar with the surroundings, he would himself keep a sharp lookout for the approach of the descending car and thereby protect himself.    Third, even if plaintiff had warrant for believing that the brakeman on the rear end of the descending car might be able to protect him against mishap, this in no degree lessened the obligation which the law imposed upon him to exercise the greatest vigilance when in a position of known danger; and, if he neglected such precaution, his own neglect contributed directly to his injury and exonerated the master.    Banking Co. v. Brantley (Ga.) 20 S. E. 98; Railroad Co. v. Jones, 95 U. S. 439; Cowles v. Railway Co. (Iowa) 71 N. W. 580. ' The plaintiff admitted in his cross-examination that, in passing in front of the car to the platform, he did not even look towards the car to observe its distance from him.    Had he been stricken down on the track under such condition, no court would permit him to speak of the culpability of the master.    Elliott v. Railway Co., 150 U. S. 245–248, 14 Sup. Ct. 85.    The brakeman, Wright, testified that, from his position at the brake, he could not see the plaintiff in passing in front of the car, and did not observe him until the accident.

But there is still another view of this case, equally fatal to the theory of the duty of the brakeman to have kept a sharp lookout for plaintiff's protection.    It was conceded by his counsel in argument at this bar, and confirmed by the evidence, that, when the plaintiff stepped in front of the car, the car was 30 feet distant from him. The foreman, therefore, had the right to assume, what the event established, that the plaintiff had ample time to effect a crossing and reach the top of the platform before there was any reasonable probability of being overtaken by the car.    And, but for the extraordinary accident of the plaintiff stepping on the projecting plank, and slipping

therefrom, when in the act of springing onto the platform, the injury would not have occurred. The only suggestion made to parry the force of this fact is that, if the brakeman had been warned to keep a lookout for the plaintiff, he might have arrested the motion of the car in time to have prevented the collision. The physical facts, however, absolutely preclude any such inference. The plaintiff's own evidence shows that, notwithstanding he made his second attempt with such quickness of energy as the recognized peril of his situation inspired, yet the car was on him before his feet had entirely cleared the edge of the platform. How, then, was it possible for the brakeman, between the fall and recovery of the plaintiff, by any exertion at his command, to have turned and set the brake, so as to have stopped the car on a descending grade instantaneously? A jury has no province to go entirely out of the realm of reason in search of a verdict. Such an extraordinary occurrence, resulting from such an unanticipated incident, must be put in the chapter of accidents. Had plaintiff attempted to reach the platform by means of first going onto the rear end of the car, his foot, perchance, might have slipped from the sideboard of the car and been mashed in the same manner. Could it, under such circumstance, be held that the defendant would be liable for the injury? Carried to its logical sequence, such a doctrine would make the master the absolute insurer of the servant against all the casualties incident to, and inseparable from, the character of the work, which the servant with full knowledge of the situation had voluntarily engaged to perform.

The trial court seems to have had some proper conception of the law applicable to this case, for in one of its instructions it told the jury that if the plaintiff, in attempting to go ahead on the track, failed, in crossing the track, to exercise that care which a reasonably prudent man would have done, "by looking out for the approaching car, or by doing any other act which a reasonably prudent man would have done under the circumstances, then you should find for the defendant." But he extracted the virtue of this declaration of law by immediately following it up by saying to the jury that it was for them to determine "whether his crossing the track under those circumstances, without looking or without other act, was a failure to exercise the care which a reasonably prudent man would have exercised under such circumstances. If you find that he did all that a reasonably prudent man would have done under those circumstances, then he would not be precluded from recovery." Thus the favorable bequest of the testament was taken away by the codicil. It afforded the jury the opportunity for which the verdict warrants us in saying it was anxiously looking.

The concise statement of the rule of practice, made by Mr. Justice Brewer, in Elliott v. Railway Co., supra, is a fit conclusion to this opinion:

"It is true that questions of negligence and contributory negligence are, ordinarily, questions of fact, to be passed upon by a jury; yet, when the undisputed evidence is so conclusive that the court would be compelled to set aside a verdict returned in opposition to it, it may withdraw the case from the consideration of the jury, and direct a verdict."

Therefore, the instruction asked by defendant at the conclusion of the evidence, directing the jury to return a verdict for the defendant, should have been given. The judgment of the court of appeals, as also that of the United States court for the Central district in the Indian Territory, is reversed, and the case is remanded, with direction, for further proceedings in conformity with this opinion.