## BAKER v. BARBER ASPHALT PAV. CO.

(Circuit Court, W. D. Missouri, W. D.   January 16, 1899.)

### No. 2,291.

1. MASTER AND SERVANT—ACTION FOR INJURY TO SERVANT—ISSUES AND PROOF.
   In an action to recover for the death of a servant, alleged to have been due to the failure of the master to provide him with a safe place to work, that the defect complained of was obvious and well known to the servant, so that the risk incident thereto was assumed by him, need not be specially pleaded as a defense, to render evidence on the subject admissible, but such facts go to the question of whether a right of action ever existed in the plaintiff, and are provable under a general denial.

2. PLEADING—AMENDMENT AFTER VERDICT.
   A court may permit an amendment after a verdict rendered by its direction to conform a pleading to the proof and the issues actually tried.

On Motion for New Trial.

Meservey, Pierce & German and Wm. E. Higgins, for plaintiff.
Lathrop, Morrow, Fox & Moore, for defendant.

PHILIPS, District Judge.    This is an action by the surviving wife
of Wells H. Baker to recover damages for the death of her husband,
occasioned by the alleged negligent act of the defendant company.
The action grows out of the following state of facts, briefly stated:
The defendant company, engaged in the construction of asphalt
pavements at Kansas City, maintained a storage room for material
used in its business.    This storage building 'was surrounded by a
high board fence, and access to the platform of this building, from
which the materials were loaded into the wagons for conveyance there-
from, was through a gateway about 30 feet wide.    The wagons
reached said platform by being backed, so that, when the rear end of
the wagon struck against the platform, the heads of the horses were
near to this gateway.    The posts to this gateway were bound to-
gether at the top with a beam, under which said wagons had to pass
in backing into the platform, and passing therefrom after being
loaded.    This beam is alleged in the petition to have been at the time
of the accident 7 feet 9 inches from the ground; so that, when a
wagon was loaded in the customary way, there was not left room for
the driver to sit upon the front end of the wagon, and pass out under
this beam, without stooping considerably.    The evidence showed, in
a general way, that, after said Wells H. Baker had loaded his wagon,
he was either in a position on the front end of the wagon, or was
standing on the side thereof, when his team suddenly started, and
passed through the gate; and in passing under said beam, in stooping,
he was struck near the back of the neck, and received injury from
which he died.
    The evidence elicited from plaintiff's witnesses disclosed the fact
that the team in question belonged to the deceased, as also the run-
ning gear of the wagon, and that the wagon bed was furnished by
the defendant; and the further fact that the deceased, for a number of
years previous to this accident, had been hauling material for the de-
fendant from this platform, and had been passing in and out under
said crossbeam, and was perfectly familiar with its position, and the
difficulty and danger, if any, of passing thereunder on his wagon.    He
had sole control and management of the horses and wagon.    On this
state of the evidence, the jury, under direction of the court, returned
a verdict for the defendant.
    The plaintiff has filed a motion for new trial, on the principal
ground that the court erred in holding that, as the deceased was per-
fectly familiar with the place where he was assigned to work, and
the position of the crossbeam and its height from the ground were
quite obvious and well known to him, and he continued in the service
of the defendant to work in and about said place without protest, he
assumed the risk incident to any defective construction of said beam,
for the reason that no such fact was pleaded in the answer as a
specific defense to the plaintiff's cause of action; in other words, the

contention of plaintiff's counsel is that this fact was not within the issues under the pleadings in the case. The answer tendered the general issue, and also a plea of contributory negligence, and further pleaded that the deceased negligently failed to observe the crossbar, and to take precautions to prevent being struck by it; that he negligently loaded his wagon in an improper manner, negligently failed to properly control his horses or heed the warnings given him, and assumed an improper position upon the wagon immediately preceding the accident.

There has perhaps been no better or more succinct statement of what is admissible in evidence under the general issue than the following exposition, by Judge Dryden, in Greenway v. James, 34 Mo. 328:

"Where a cause of action which once existed has been determined by some matter which subsequently transpired, such new matter must, to comply with the statute, be specially pleaded; but, where the cause of action alleged never existed, the appropriate defense under the law is a general denial of the material allegations of the petition; and such facts as tend to disprove the controverted allegations are pertinent to the issue."

The very groundwork of the plaintiff's cause of action was the negligence of the defendant, as master, in failing to furnish the deceased a reasonably safe place in which to perform the work in which he was engaged. This obligation on the part of the master is not, however, so absolute and unconditional that he is made responsible for any injury occasioned to an employé by imperfect construction or arrangement of the place in which the employé is assigned to work. As the master is ordinarily permitted to conduct his business in his own way, and to apply such appliances and structures as he may deem essential for his use, he is only liable to his servant for an injury when it results by reason of the neglect of the master to furnish the servant reasonably safe appliances with which to work, and a reasonably safe place in which to perform it, where the servant himself is not aware at the time of the injury of the imperfection of the structure or the danger incident to the place. There is no rule of law better settled than that where the structure or place which caused the injury is perfectly obvious to the eye, and well known to the servant, both before and at the time of the accident, he himself assumes the risk of working under such conditions, and the master is excused from any liability therefor to the servant.

As said by the court in Coal Co. v. Reid, 29 C. C. A. 475, 85 Fed. 917:

"Where the servant possesses actual knowledge of the risk, obtained both before and during the engagement of service, he is not merely required to exercise greater vigilance to avoid the danger, but he assumes the risk. Peirce v. Clavin, 27 C. C. A. 227, 82 Fed. 550."

In Tuttle v. Railway Co., 122 U. S. 195, 7 Sup. Ct. 1166, the supreme court approved the following announcement of the rule by Judge Cooley:

"The rule is now well settled that, in general, when a servant, in the execution of his master's business, receives an injury which befalls him from one of the risks incident to the business, he cannot hold the master responsible, but must bear the consequences himself. The reason most generally as-

signed for this rule is that the servant when he engages in the employment, does so in the view of all the incidental hazards, and that he and his employer, when making their negotiations fixing the terms, and agreeing upon the compensation that shall be paid to him, must have contemplated these as having an important bearing upon their stipulations. As the servant then knows that he will be exposed to the incidental risk, 'he must be supposed to have contracted that, as between himself and the master, he would run this risk.' "

The logical sequence, therefore, of this proposition, is that, as to such servant, the master is not chargeable with actionable negligence for an injury sustained by the servant from an obvious defective appliance or dangerous place, well known to him when he enters the service and undertakes to work in such a place; and the proof of this fact is involved within the very terms of the allegation of the petition, as it establishes the fact that no cause of action ever existed in favor of the deceased or his legal representative.

The petition in this case shows on its face that, "for a long time prior" to the date of this accident, the deceased was in the employ of the defendant as a teamster, and that it was his duty as such to haul paving material from said place of business, and that he was required to use this platform, and to reach it through said gateway and under said crossbeam.    It occurred to the court when this petition was read that it disclosed on its face that, as to the alleged injury, the rule of "volenti non fit injuria" should be applied.    And when the facts were fully developed by the plaintiff's own witnesses that whatever defects existed in the manner of the construction of said beam, and whatever dangers were incident to working about said place, were not only perfectly obvious, but were better known to the deceased than to his employer, she had established affirmatively the fact that there was no negligence on the part of the defendant, and therefore the cause of action was disproved.    Her husband had not only been driving in and out of this gate, under this beam, for years prior to the accident, but, as the evidence disclosed, he had passed in and out at this place with his team two or more times the day of the accident.

This is clearly the view of the supreme court of the United States in Kohn v. McNulta, 147 U. S. 238, 13 Sup. Ct. 298.    The injury complained of resulted from the plaintiff, an employé of the railroad company, being caught between the deadheads of the car while coupling them.    The evidence showed that he was familiar with coupling such cars, and that the defects in the deadheads were obvious to any one making the couplings, and the danger therefrom was apparent.    The court said:

"The intervener was no boy, placed in a position of undisclosed danger, but a mature man, doing the ordinary work which he had engaged to do, and whose risks in this respect were obvious to any one.    Under those circumstances, he assumed the risk of such an accident as this, and no negligence can be imputed to the employer."

So, in Railroad Co. v. Baugh, 149 U. S. 386, 13 Sup. Ct. 914, Mr. Justice Brewer, while recognizing the doctrine of the obligation imposed by law, on grounds of public policy, upon the master, to furnish the employé efficient machinery with which to work, and a reasonably safe place therefor, excepts from its operation such defects as are "obvious and necessary."

I do not think it too much to say that neither the supreme court of the United States nor any of the courts of appeal have ever regarded it as essential to plead specifically the fact of the assumption of the risk by servants, in order to make it available to the master. In Railroad Co. v. McDade, 135 U. S. 554, 10 Sup. Ct. 1044, under the general issue, the case was tried throughout, as it was also discussed by the learned judge who wrote the opinion, as if that issue had been fully presented under the general issue. It was so treated by the court of appeals in this circuit in West v. Pacific Co., 29 C. C. A. 219, 85 Fed. 392, and in Coal Co. v. Reid, 29 C. C. A. 475, 85 Fed. 914. In Hudson v. Railway Co., 123 Mo. 445, 27 S. W. 717, the plaintiff sought to recover for an injury received from the defendant railway company by leaving its cars in a certain position in violation of an ordinance of the city, and the answer was a general denial. The evidence elicited from plaintiff's witnesses showed that he received the injury under circumstances of assumption of the risk, and through his contributory negligence. It was held that the question of defendant's negligence was immaterial, for the reason that no cause of action was predicable thereon. See Epperson v. Postal Tel. Co. (recently decided by supreme court of Missouri) 50 S. W. 795.

Counsel for plaintiff have cited the court to a number of rulings by some of the state courts, which are very fitly characterized by the last one cited,—Stock-Yards Co. v. Goodwin (Neb.) 77 N. W. 357. The injury in that case resulted from the breaking of a hand brake while the brakeman was working it; and it was sought to be shown by the defendant that there was a well-known rule, custom, and manner of moving the cars, and for the inspection of brakes. It was ruled that such a defense was not available to the defendant, for the reason that it was not pleaded. The defendant merely pleaded that, when the brakeman attempted to set the brake, he knew that the car had not been inspected, the court saying: "A judgment whose sole support is evidence which did not tend to prove or disprove any issue made by the pleadings in the case could not stand." This ruling of the court is justified on the ground that, while the brakeman may have known the car had not been inspected, he did not know that it was out of order. It is quite clear from the further discussion in that case that the court recognized the fact that where the injury results from a patent and obvious defect, known to the workman at the time he engages upon the service, such evidence would defeat a recovery, because it inheres in the very cause of action the plaintiff asserts. The court cites the case of Arnold v. Canal Co., 125 N. Y. 15, 25 N. E. 1064, where the injury resulted while the plaintiff was attempting to couple two cars, one of which had a broken drawhead, and the negligence imputed was because of that defect. As the evidence disclosed that the defect was obvious, and known to the employé, or should have been known to him, it was held that under the general issue no recovery could be had. And the Nebraska court, commenting upon this decision, said:

"Under these circumstances, the court held that the company was not liable for his injury. We think the holding in that case was correct, and that it is justified on two grounds: (1) The defect which caused the injury was an

obvious one. That the drawhead of the car was broken was discernible from a casual glance. * * * By engaging in this business, he assumed the risk of receiving an injury from the defective car. He was bound to know or presume that the cars which he was handling were defective, and to be on his guard."

And the court concludes by saying that:

"The doctrine of this court is that an employé assumes the risk arising from defective appliances used or to be used by him, or from the manner in which a business in which he is to take a part is conducted, and such risks are known to him, or are apparent and obvious to persons of his experience and understanding."

—The evident conclusion from which is that if the evidence in the case before the court had shown, as here, that the risk was an obvious one, and known to the employé, it would have been admissible in evidence, for the palpable reason that the employé assumed it; and, under his implied contract with the employer, no negligence could be imputed by him to the employer for failure to remove the defective appliance or provide a safe place.

Defendant's counsel ask the court, in the event it entertains the opinion that the defendant could not avail itself of the evidence in question for not having specifically pleaded the assumption of the risk by the deceased, to be permitted to amend the answer in that particular, to conform to the evidence. We entertain no doubt of the authority of the court, even after verdict, to permit such amendment. See Bamberger v. Terry, 103 U. S. 40–44; Bowden v. Burnham, 8 C. C. A. 248, 59 Fed. 752–755; Rev. St. Mo. 1889, §§ 2098, 2101. While the court is quite firm in its opinion that such amendment is not necessary to support the verdict and judgment in this case, leave is granted to the defendant, instanter, if it so desires, to add to its answer herein such plea, as it would in no wise alter the issues as they were tried, and is conformable to the evidence. The motion for a new trial is denied.