102  507
107  668
102  507
123  266

---

W. G. COWLES v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

**Master and Servant:** RISK OF EMPLOYMENT: *Contributory negligence.* A railroad employe, who, in the absence of emergency, goes in front of an engine which has almost reached a turntable, knowing that it is still moving with substantially unchecked speed, assumes the risk of so doing, although it was the duty of the hostler in charge of the engine to stop it and wait for a signal before going on the turn table.

SAME. Where a helper at a roundhouse knew of the existence of a hole in the turntable and had noticed its location every night that he had worked there up to the time of the accident, and entered no complaint, he assumed the risk of working on such defective turn table, though he may have seen the bridge carpenter measuring it; there being no promise to repair.

*Appeal from Iowa District Court.*—HON. M. J. WADE, Judge.

FRIDAY, MAY 28, 1897.

ACTION to recover damages resulting from an injury to plaintiff received while in the employment of

defendant. Trial to jury; verdict and judgment for plaintiff; and defendant appeals.—*Reversed.*

*Robert Mather, W. T. Rankin, Hedges & Rumple,* and *Geo. E. McCaughan* for appellant.

*Remley & Ney* and *Ranck & Bradley* for appellee.

LADD, J.—The plaintiff began work for the defendant at Stuart, Iowa, February 8, 1893, helping at the roundhouse, throwing switches, making fires, and turning the turntable. After February 24 he began work at about 6 P. M., and continued through the night, and his employment was throwing switches, putting engines in and out of the roundhouse, opening and closing doors, and assisting at and turning the table under the direction of the night engineer or hostler. The roundhouse is south of the main track, and there are side tracks to the coal chute, to the clinker pit, the lumber yard, and another called the "spur to the turntable." The roundhouse, with thirty-one stalls, is in the form of an arc, with the turntable in the center. Three tracks run from the yard to this table, which is about sixty feet long and about fifteen feet wide, covered with two-inch plank, and the pit is about five feet deep. The rails on the table are held to those of the approaching track by a clamp, which fits on the top of the flange, goes between the ends of the rails, and is fastened with a pin resting on the outside. As helper it was the duty of plaintiff to see that these clamps were right, and the table in proper condition, before the engine went on. On the Wednesday preceding the injury, and while he was assisting the hostler, Geisenhagen, as helper, an engine ran off the track, and broke a hole in the plank of the turntable, four or five feet long and six to eight

inches wide, some eight or ten inches from the rail on the outside, and within two and one-half feet from the end of the table. The plaintiff continued in the same employment, using the turntable every night, up to the time of the accident, with full knowledge of its condition, without making any complaint, and receiving no promise of repair. He says he saw the bridge carpenter measuring the hole on the night in question, but did not notice anything further done with it. On the night of the injury, Tuesday, July 25, 1893, and about 11:30 P. M., one Adams was hostler, and the plaintiff was acting as helper. The engine was on the coal track, and from there was run on the table, and then taken to the clinker pit, where it was cleaned out; the clamps being left on the rails. The engine started back to the table with plaintiff sitting between it and the tender. When about one hundred feet from the table, and moving at the rate of three or four miles an hour, steam was shut off, and the cylinder cocks opened. There was evidence tending to show that the engine should be stopped before going on the table, and wait for the signal from the helper before proceeding. When twenty or thirty feet from the table, plaintiff says he was directed by Adams to get off and see if the clamps were ready. The plaintiff got off on the left side of the engine, and walked alongside it until it was two or three feet from the table. The engineer did not check it, and the plaintiff stepped around in front of the moving engine, as he says, to see if the clamps were right, and to give the signal to come on if they were right. The engine was so close that to do this he had to step on the table, and when he did so the pilot was within a foot or so and moving slowly. He watched the engine and the table. He was brushed aside by the engine, stepped in the hole referred to, and his hand was caught under the wheel.

I.    At the conclusion of the plaintiff's evidence the defendant moved the court to direct the jury to return a verdict for it, on the ground that the negligence of the plaintiff directly contributed to his own injury. This motion was overruled, and, when renewed after the introduction of all the evidence, was again overruled. These rulings only need be considered, as the evidence clearly establishes such contributory negligence on the part of the plaintiff as will preclude any recovery. He knew of the existence of the hole in the table, as he was present when it was made, and noticed its location every night up to the time of the injury. True, he says he saw the bridge carpenter measuring it, but does not claim any repairs were made, or that he was informed these would be. He entered no complaint of the condition of the table, and received no promise of repair. Under the circumstances he assumed all risks incident to its condition. *Greenleaf v. Railroad Co.*, 29 Iowa, 14; *Muldowney v. Railroad Co.*, 39 Iowa, 615; *Perigo v. Railroad Co.*, 52, Iowa, 276; *Money v. Coal Co.*, 55 Iowa, 671; *Wells v. Railroad Co.*, 56 Iowa, 520; *Burns v. Railroad Co.*, 69 Iowa, 450; *McKee v. Railway Co.*, 83 Iowa, 616.

II.    When the plaintiff walked alongside the engine, he knew its motion, as well as the hostler. He says he watched it, and also the table, when it was within two or three feet from the table, and so close that he was compelled to get on the table in order to go in front of the engine. Knowing that it was still moving, and the speed not being checked by Adams, he voluntarily went in front of it to look at the clamps on the other side. The excuse offered for so doing,—that it was the duty of the hostler to stop the engine before going on the table and wait for a signal,—will not avail when plaintiff knew the hostler

was not stopping it, and that it was then moving nearly as rapidly as the plaintiff himself. Nor was it a case where the plaintiff was compelled to act in an emergency, for the information he might obtain would be of no possible benefit under the circumstances. Under the repeated adjudications of this court, recovery cannot be had when one voluntarily exposes himself to danger of which he knows, or might have known by the exercise of ordinary care. *Muldowney v. Railway Co.*, 36 Iowa, 462; *Gibbons v. Railway Co.*, 66 Iowa, 232; *Magee v. Railway Co.*, 82 Iowa, 249; *Platt v. Railway Co.*, 84 Iowa, 695. In *Nichols v. Railroad Co.*, 69 Iowa, 154, where plaintiff attempted to couple a stationary freight car to a train of twenty-eight cars backed to it by an engine, and, before the train reached the car, gave a signal to stop the train, which was disobeyed or misunderstood, and, knowing that his signal had been disregarded, went between the moving cars and was injured, he was held to be guilty of contributory negligence. One Oaks stepped between the tender and a car to uncouple them, and, while there, the train was negligently started without a signal from him. He remained between the moving cars, contrary to the rules of the company, and was injured by stepping into a cattle guard, the location of which he knew. It was held that he could not recover, owing to the fact that his own negligence contributed to his injury. *Sedgwick v. Railway Co.*, 76 Iowa, 340. The principle involved in these cases is clearly controlling in that under consideration. Conceding it to have been the duty of the hostler to stop the engine before going on the turntable, yet the plaintiff knew he had failed in this, and, so knowing, went in front of the moving engine, and thereby exposed himself to the perils and dangers of the situation. That party who

last has a clear opportunity of avoiding the accident, notwithstanding the negligence of his opponent, is solely responsible for it. 1 Shearman & R. Neg. 99. See *Ferguson v. Railway Co.*, 100 Iowa. 733. It clearly appears, from the plaintiff's own testimony that his own negligence directly contributed to his injury, and for this reason he cannot recover.—REVERSED.