ANNA M. JACOBSON, Administratrix, etc., Appellant, v. NINA M. SMITH, Appellee.

**Mines:** SAFETY GATES. Code, section 2489, requiring that safety gates shall be maintained at the entrance to a mine shaft, contemplates that the shaft opening shall be guarded so as to prevent involuntary entrance and not an absolute and complete covering for the entire opening.

**Negligence.** The contention that a mine owner was negligent in not providing a cage with a covering, as required by Code, section 2489, is untenable, where it appears that the injured party was at work on top of the cage at the time of the accident.

, Assumption òf Risk. Where one without objection and with a full
3    knowledge of all the circumstances engages in work attended
     with danger, he assumes the risk incident thereto.

*Appeal from Polk District Court.*—HON. C. P. HOLMES,
Judge.

WEDNESDAY, MARCH 9, 1904.

ACTION to recover damages for a personal injury occasioned as alleged by the negligence of defendant, and resulting in the death of plaintiff's intestate. There was a directed verdict in favor of defendant, and plaintiff appeals.
—*Affirmed.*

*J. A. Merritt* and *J. K. Macomber* for appellant.

*Read & Read* for appellee.

BISHOP, J.—The motion to direct a verdict challenged the sufficiency of the evidence to make out a case for recovery under the pleadings in the action. The defendant operates what is known as the "Great Western Coal Mine" in Polk county, one C. F. Lee being employed and engaged by her as the superintendent thereof. It appears that at the time of the accident in question the mine had become partially flooded with water, resulting in the suspension of mining operations. Plaintiff's intestate, Edward Jacobson, was employed by Lee to assist in the work incident to pumping the water out of the mine. From the evidence it appears that the mine shaft was in two divisions, each about six feet square, and separated by a board partition. Each division was provided with a cage or elevator. At the time in question one of the cages only was in operation. In the other shaft division the cage had been lowered to nearly the water level, and made stationary. Thereon was placed a steam pump, and this was connected with pipes extending up the shaft to the surface—one pipe to conduct steam from the boiler for

the operation of the pump, and the other through which the water was forced to the surface and discharged. At intervals down the shaft braces had been put in to hold the pipes stationary. These braces extended across the shaft on each side of the pipes, wooden wedges being used to lock or make secure the pipes within the same. Jacobson was "pit boss," so called, at the mine, and was familiar with the condition of things as they existed. It having been determined to lower the pump in the shaft nearer to the water level, Jacobson was directed by Lee to make examination of the bracings in the shaft, and see that all were secure, which he did, and reported everything in order. He was then directed by Lee to take three men and go down and proceed to lower the pump. The men descended upon the cage in operation, entered the other shaft through an opening in the partition, got on top of the stationary cage, and proceeded to disconnect the pipes leading to the pump preparatory to lowering the cage upon which the same rested. While the men were thus engagd, a missile of some kind, the nature and character of which is unknown, came down from above, and struck Jacobson on the head, resulting in his death within a few hours. The negligence charged against defendant is that she failed in her duty to maintain a proper gate at the surface opening of the shaft, and failed to maintain a proper covering for the cage upon the floor of which the pump was placed.

We are unable to see how the accident could be attributed to the want of a gate at the surface opening, conceding, under the provisions of Code, section 2489, it was the duty of defendant to maintain such. The statute requires that safety gates shall be maintained at the opening of a shaft, but manifestly this is to guard the opening, and prevent an involuntary entrance thereto. It could not serve to prevent the dropping of a missile into the shaft, unless, indeed, the device be not only a gate but an absolute and complete covering of the entire opening. That such was not contemplated by the statute is made clear by the fact that the section under consid-

eration makes the requirement in terms that the cages operated in a shaft shall be provided by a safety covering. Counsel for appellant do not pretend that there was any requirement apart from the statute that the surface opening should be kept tightly closed, and, as we understand, such would have been impracticable, and is never attempted in mine operation.

The contention that defendant was negligent for that the cage was not properly covered is without force in view of the fact, clearly established by the evidence, that the men were at work on top of the cage at the time of the accident. Where the missile came from no one could tell with certainty. It is probable that in the work of disconnecting the pipes a wedge was loosened and fell. Be the fact as it may, however, we think the situation must be summed up by saying that the presence of the missile ·was not due to a want of proper care on the part of the defendant, as charged against her. It may be that the work being done was attended with danger, but it is to be said, in any event, that plaintiff's intestate knew the conditions under which he was working. He had helped to create the same, had made inspection before he went to work, and accepted of the task without question or protest. Under the circumstances he assumed such risks as were incident to the employment. This conclusion finds support in principle in the following authorities: *Money v. Laurel V. Co.,* 55 Iowa, 671; *Beckman v. Coal Co.,* 90 Iowa, 252; *Cowles v. Railway,* 102 Iowa, 510.—*Affirmed.*