## CHICAGO GREAT WESTERN RY. CO. v. CROTTY

(Circuit Court of Appeals, Eighth Circuit. October 6, 1905.)

### No. 2,003.

1. NEGLIGENCE—PERSONAL INJURY—ASSUMPTION OF RISK AND CONTRIBUTORY NEGLIGENCE MAY ARISE OUT OF SAME FACTS.

While assumption of risk and contributory negligence rest upon different grounds and are distinct and independent defenses, they are not necessarily incompatible, but may and sometimes do arise out of the same facts, as where the danger is not only known or obvious, but injury therefrom is so imminent that no person of ordinary prudence would assume the risk.

2. MASTER AND SERVANT—SERVANT ACTING UNDER DIRECTION OF SUPERIOR.

Where a servant knows and appreciates the danger of the act which he undertakes, he does not any the less assume the risk of injury or become chargeable with contributory negligence, as the case may be, because he undertakes it under the direction of his superior.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 649, 781.]

3. SAME—STAKING OF CAR.

A brakeman, who, in the absence of an emergency justifying his action, participated in staking a car with full knowledge and appreciation of the danger, assumed the risk of injury, although the conductor may have been negligent in directing that the car be staked when there was another and safe method of accomplishing the same result, and in directing the use of an engine and train in the process of staking when the use of the engine alone was reasonably possible and less dangerous; and, where the danger was so imminent that no person of ordinary prudence would have assumed the risk, the brakeman was also guilty of contributory negligence.

4. SAME—IOWA STATUTE—NEGLIGENCE OF CO-EMPLOYÉ ON RAILROAD—ASSUMPTION OF RISK.

The statute of Iowa (Code 1897, § 2071) abrogates in respect of the "use and operation of any railway" the common-law rule that an employé by his contract of employment assumes the risk of injury from the future negligence of a fellow servant; but it does not affect the rule that, where an employé undertakes an act the danger of which is obvious or actually known to him, and is inherent in the act itself or in the particular manner in which it is to be performed, he assumes the risk of injury, and this, although the danger may have arisen from the prior negligence of a co-employé.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the Northern District of Iowa.

Thomas D. Healy (M. F. Healy, D. M. Kelleher, A. G. Briggs, and John L. Erdall, on the brief), for plaintiff in error.

141 F.—58

H. C. Kenline and J. J. McCarthy (R. P. Roedell, on the brief), for defendant in error.

Before SANBORN and VAN DEVANTER, Circuit Judges.

VAN DEVANTER, Circuit Judge.   This was an action to recover damages for the death of James J. Crotty, a brakeman, which occurred while he was engaged, with others, in moving a car from one of two parallel side tracks to the other over a connecting switch by the process of staking, a term which indicates that the car was being pushed toward and over the switch by means of a pole placed between the car and a moving engine or train on the other track.   The only negligence charged against the defendant which the evidence tended to sustain was that staking, although known to be dangerous, was resorted to when another and entirely safe method of moving the car was reasonably open, and that an engine and train were used in the staking when the use of the engine alone was reasonably possible and was known to be attended with less danger.   That this constituted actionable negligence is not questioned.   The defenses were assumption of risk and contributory negligence.   The defendant, conceiving that both were conclusively established by the evidence, requested that the jury be instructed to return a verdict in its favor.   The request was denied, and that ruling is assigned as error.

Without conflict, the evidence, and more especially that for the plaintiff, established these facts:   A train crew, in which the deceased was a brakeman, had just brought a freight train, consisting of an engine and about seven cars, from Clarion, Iowa, to one of two side tracks in the defendant's switching yards at Coulter, in that state, when the station agent requested the crew to move a loaded coal car to that side track from the other one over a connecting switch.   The crew, with the aid of a section gang, pushed the car by hand until it became stalled in a frog, or by ice which had formed in places along the rails.   Under the conductor's direction the process of staking was then undertaken.   The deceased procured an ordinary fence post from near by, placed one end of it against the caboose, which was the rear car in the freight train, and held the post so that the other end would come in contact with the coal car as the train moved backward toward the switch.   The conductor signaled the engineer to back up, and when the post came in contact with the coal car the latter ran ahead a few feet more rapidly than the train was moving, the post slipped and fell, and the train was stopped at a signal from the conductor.   In this first effort the post was applied to the corners of the cars in such manner that the deceased was not upon either track, but that was changed at the conductor's direction.   One end was placed in the hollow of the coupler of the caboose, where it would not slip so easily, and the deceased took a position on the track in the rear of the caboose, or rather in front of it, considering the direction in which it was to move.   The train was again put in motion, but the resistance offered by the coal car, by reason of the ice which had formed in places along the rails, was so variable that the car ran ahead a few feet every now and then, making it impossible to maintain the contact.   The staking proceeded and the

deceased walked along in front of the moving caboose, holding the post in position to keep it from falling as the coal car jumped from one icy place to another. By reason of the convergence of the tracks the coal car was gradually moved over in front of the caboose and the deceased came to occupy a position between the ends of these moving cars, the distance between which was seven feet, the length of the post. He remained in this exposed position, and the staking was continued, until the post slipped and fell. The cars then came together and he was crushed to death. The train was being moved backward as slowly as it well could be, and when the post slipped the engine was promptly stopped at an emergency signal from the conductor, but by reason of the slack in the train, which was not unusual, the caboose did not stop until it came in contact with the coal car. The deceased made no objection to the staking of the car or to the part in it which was assigned to him. He was 28 years of age, was intelligent and well educated, and had had seven or eight years of experience as a switchman and brakeman. The accident occurred in the daytime.

There can be no difference of opinion among candid, reasonable and impartial men upon these facts. The dangers which inhered in the process of staking were obvious and easily capable of full appreciation; more than that, they were vividly illustrated to the deceased as the staking progressed and before he paid the awful penalty for disregarding them. He knew the particular conditions under which the staking was undertaken and continued. He saw and understood how many cars were in the train, how much slack there was in it, and how it was controlled, because he was one of the crew which brought it from the station where it was made up. He saw and understood the condition of the track which contributed to the irregular and jerky movement of the coal car. He saw and understood what character of post he was using. He saw and understood that the contact with the coal car could not be maintained, that the post was all that kept the cars from coming together and that it was inclined to slip and fall. In short, he knew whatever of defect there was in the method adopted, or in the appliances used, to transfer the car from one track to the other, and whatever of enhancement of the risk there was in the particular conditions under which the transfer was undertaken. It is idle to say that he may not have fully appreciated the dangers of the undertaking, or of his part in it. They were so obvious that their full appreciation was unavoidable to one of his years, intelligence, and experience. Thoughtful consideration of the undisputed facts irresistibly leads to the conclusion that he participated in the staking of the car with full knowledge and appreciation of its dangers and without objection, and that thereby he voluntarily assumed the risk of injury. Worden v. Humeston & Shenandoah Ry. Co., 72 Iowa, 201, 207, 33 N. W. 629; Cudahy Packing Co. v. Marcan, 106 Fed. 645, 45 C. C. A. 515, 54 L. R. A. 258; King v. Morgan, 48 C. C. A. 507, 109 Fed. 446; Musser-Sauntry Land, etc., Co. v. Brown, 61 C. C. A. 207, 126 Fed. 141; St. Louis Cordage Co. v. Miller, 126 Fed. 495, 61 C. C. A. 477, 63 L. R. A. 551; Glenmont Lumber Co. v. Roy, 61 C. C. A. 506, 126 Fed. 524.

While assumption of risk and contributory negligence rest upon dif-

ferent grounds and are distinct and independent defenses, they are not necessarily incompatible, but may and sometimes do arise out of the same facts, as where the danger is not only known or obvious, but injury therefrom is so imminent that no person of ordinary prudence would assume the risk. Musser-Sauntry Land, etc., Co. v. Brown, 61 C. C. A. 207, 126 Fed. 141; St. Louis Cordage Co. v. Miller, 126 Fed. 495, 502, 505, 61 C. C. A. 477, 484, 487, 63 L. R. A. 551. This case is of that character. Walking between moving cars separated by only a short distance is always attended with much and obvious danger. The deceased was walking between moving cars; more than that, he was attempting to hold in place between them an unwieldy fence post which required such use of his arms and of the strength of his body as to impair his capacity to use them quickly and freely for his protection. The irregular and jerky movement of one of the cars made his task altogether uncertain of accomplishment. If the post slipped, as it was likely to do at any moment, it would be most difficult for him to extricate himself from his position before the gap between the cars was closed, and, failing in this, he would almost certainly receive serious injury if he did not lose his life. The danger was therefore imminent as well as obvious; so much so that no person of ordinary prudence would have assumed the risk. By its assumption the deceased manifested a reckless disregard of his own safety, and was guilty of contributory negligence.

But it is said that his participation in the staking of the car was not voluntary because it was at the direction of his superior officer, the conductor. The premise is correct, but the conclusion does not follow. The deceased knew and appreciated the danger, and in that respect stood upon an equal footing with the conductor. Yet he complied with the latter's direction without objection when he could have complied or not as he chose. The law adjudges such action to be voluntary. It is well settled that where a servant knows and appreciates the danger of the act which he undertakes he does not any the less assume the risk of injury, or become chargeable with contributory negligence, as the case may be, because he undertakes it under the direction of the master's representative. Gorman v. Des Moines Brick Mfg. Co., 99 Iowa, 257, 264, 68 N. W. 674; Kean v. Detroit Copper & Brass Rolling Mills (Mich.) 33 N. W. 395, 400; Toomey v. Eureka Iron & Steel Works (Mich.) 50 N. W. 850; Showalter v. Fairbanks (Wis.) 60 N. W. 257; Writt v. Girard Lumber Co. (Wis.) 65 N. W. 173; Bradshaw v. Louisville & N. R. Co. (Ky.) 21 S. W. 346; Linch v. Sagamore Mfg. Co., 143 Mass. 206, 9 N. E. 728; Wescott v. N. Y. & N. E. R. R. Co., 153 Mass. 460, 27 N. E. 10; Reed v. Stockmeyer, 20 C. C. A. 381, 384, 388, 74 Fed. 186; Railroad Co. v. Jones, 95 U. S. 439, 443, 24 L. Ed. 506. The last case was one in which the plaintiff was injured in a collision while riding on the pilot of a locomotive. He sought to excuse his act in occupying such an exposed position by evidence tending to show that he and other employés of the defendant were about to be conveyed from their place of work by a train consisting of a locomotive and box car, when the defendant's representative told them to jump on anywhere as they were behind and must hurry, and that in response to this direction

the plaintiff and others took a position on the pilot of the locomotive. Of this it was said by the court:

"The knowledge, assent, or direction of the company's agents as to what he did is immaterial. If told to get on anywhere, that the train was late, and that he must hurry, this was no justification for taking such a risk. As well might he have obeyed a suggestion to ride on the cowcatcher, or put himself on the track before the advancing wheels of the locomotive. The company, though bound to a high degree of care, did not insure his safety. He was not an infant nor non compos. The liability of the company was conditioned upon the exercise of reasonable and proper care and caution on his part. Without the latter the former could not arise."

Gorman v. Des Moines Brick Mfg. Co., supra, was a case where the plaintiff was injured while attempting to loosen, with a wrench, a greasy burr on vibrating machinery. The wrench slipped and his hand was caught in revolving cogwheels. He sought to excuse his act in attempting to remove the burr without stopping the machinery by testimony to the effect that the defendant's representative directed him to keep the machinery running and not to stop it. The trial court held that the plaintiff was guilty of contributory negligence and directed a verdict for the defendant. In disposing of the claim that the plaintiff acted in obedience to the direction of his superior, it was said by the Supreme Court of Iowa:

"But if it be conceded that the plaintiff was given specific directions to do the act in the manner he did, or that he was justified in believing that such were given him, yet we are not prepared to say that the court was in error in sustaining the defendant's motion. Plaintiff testified that when he attempted to loosen the nut, the machine was vibrating, so that the wrench he was using was likely to slip off, and that he knew that if it did slip off, his hand would go into the revolving cogwheels, which were not more than five inches from his hand. Now, it seems to us that the danger was so manifest as to prevent a reasonable, prudent, and cautious man from risking it, even upon an order from his superiors in authority. It is well settled that while obedience to an order from a superior authority will, as a rule, relieve one from the charge of contributory negligence, yet, when the act to be done is so reckless or obviously dangerous as that no reasonably prudent man would have undertaken it, the order from the superior will be no excuse. Plaintiff was familiar with the dangers attendant upon the use of the wrench so close to the moving cogwheels, as was the defendant's superintendent, and in obeying the orders given him, if it be conceded any were given, he assumed the risks incident to the performing of his task."

The contention is also made that the deceased's participation in the staking of the car was not voluntary or negligent because he was acting in an emergency or under circumstances when he was not free to refuse obedience to the conductor's direction, and in support of this contention reference is made to Kane v. Northern Central Ry. Co., 128 U. S. 91, 94, 9 Sup. Ct. 16, 17, 32 L. Ed. 339, where it was said:

"An employé upon a railroad train, likely to meet other trains, owes it to the public, as well as to his employer, not to abandon his post unnecessarily."

But as it was an essential part of the plaintiff's case that the staking of the car was itself unnecessary, or that the use therein of more of the freight train than the engine was unnecessary, and as both of these matters are shown to have been apparent, it is not open to the plaintiff to say that compliance with the conductor's direction was a duty owing to

the public or to the defendant. Moreover, the coal car was not part of the freight train, or intended to be made so, and it is a necessary conclusion from the evidence that noncompliance with the conductor's direction would not have been an abandonment of the deceased's post as a brakeman of the freight train, would not have interfered with the progress of that train toward its destination, and would not have subjected either life or property to danger, but at most would have led to the adoption of a safer method of transferring the coal car from one point in the defendant's yards to another.

The claim is also made that under the statute of Iowa (Code 1897, § 2071), as interpreted by the Supreme Court of that state in Phinney v. Illinois Central Ry. Co., 122 Iowa, 488, 98 N. W. 358, the deceased did not assume the risk of injury from obedience to a negligent direction of the conductor because the latter was a fellow servant. Careful examination of the statute, the case cited and other decisions of the same court, discloses that, so far as the statute is applicable to the present case, its only effect is that of attributing the negligence of the conductor to the defendant. It abrogates, in respect of the "use and operation of any railway," the common-law rule that an employé, by his contract of employment, assumes the risk of injury from the future negligence of a fellow servant; but it does not affect the rule that where an employé voluntarily undertakes an act, the danger of which is at the time obvious or actually known to him, and is inherent in the act itself or in the particular manner in which it is to be performed, he assumes the risk of injury therefrom. In the case cited a railroad employé was injured in a collision caused by the negligence of a train dispatcher of which he neither had nor could have had any knowledge prior to the injury, while in the present case the negligence of the conductor was an existing fact or condition with knowledge and appreciation of which the deceased elected to participate in the staking of the car and to chance the danger from which the injury ensued. This distinction is clearly recognized in the decisions of the Supreme Court of the state. Thus, in Pearl v. Omaha & St. Louis Railroad Co., 115 Iowa, 535, 88 N. W. 1078, where the death of a brakeman was caused by the negligence of the conductor in failing to set the brakes upon a detached portion of his train, of which the brakeman could have had no knowledge at the time, it was held that there was no assumption of the risk because, as was said, a railroad employé "never, under our statute, assumes the risk of the future, unanticipated negligence of his co-employé." And in Cowles v. Chicago, Rock Island & Pacific Ry. Co., 102 Iowa, 507, 71 N. W. 580, where a railroad employé was injured by going in front of a moving engine to adjust a turntable, when the engine had almost reached the turntable and was moving with substantially unchecked speed, it was held that he assumed the risk of injury, although it arose primarily from the negligence of a co-employé whose duty it was to stop the engine and wait for a signal indicating that the turntable was adjusted. It was said in that case:

"Under the repeated adjudications of this court, recovery cannot be had when one voluntarily exposes himself to danger of which he knows, or might have known by the exercise of ordinary care."

That the statute relied upon does not prevent an assumption of the risk in instances like the present, where the danger, though arising from negligence, is known and appreciated, is also shown in the case of Martin v. Chicago, Rock Island & Pacific Ry. Co., 118 Iowa, 148, 153, 158, 91 N. W. 1034, 59 L. R. A. 698, 96 Am. St. Rep. 371.

Another Iowa statute requires that in every railroad train there shall be "a sufficient number of cars with some kind of efficient automatic or power brake to enable the engineer to control the train without requiring brakemen to go between the ends or on the top of the cars to use the hand brake," and in respect of violations of the duty so imposed abolishes the defense of assumption of risk. Code 1897, §§ 2082, 2083. It is now said that this statute was violated in making up the freight train, and that this contributed to or caused the injury. But no such contention appears to have been insisted upon in the Circuit Court, and of course it cannot be made in this court in the first instance. The petition contains no reference to the statute, to the absence of automatic or power brakes from any of the cars, or to any inability of the engineer to properly control the train. Some evidence was introduced respecting the number of cars equipped with such brakes, the manifest purpose of which was to show the amount of slack in the train, and nothing more; but there was no evidence as to what proportion or number of the cars should have been so equipped to enable the engineer to exercise the prescribed measure of control over the train. Whether, therefore, the statute is applicable to a case in which the injury for which recovery is sought did not result from going between or on top of the cars to use hand brakes need not be considered at this time.

As it follows from what has been said that the court erred in refusing to direct a verdict for the defendant, the judgment is reversed, with a direction to grant a new trial.