# MÁRQUEZ *v.* THE NEW YORK AND PORTO RICO STEAMSHIP CO.

## APPEAL from the District Court of Ponce.

### No. 599.—Decided May 5, 1911.

CONFLICTING EVIDENCE—ESTIMATE OF TRIAL COURT—MANIFEST INJUSTICE.—It is a well-recognized rule, established in American jurisprudence and in several decisions of this court, that where the evidence is conflicting the estimate made by the trial court will not be disturbed on appeal unless clearly wrong or working manifest injustice to the losing party.

EMPLOYERS' LIABILITY—FEDERAL STATUTE OF JUNE 11, 1906—QUESTION RAISED FOR FIRST TIME ON APPEAL.—Although the question of whether or not the Federal Employers' Liability Act of June 11, 1906, is applicable to a case of damages has not been raised in the lower court, such question may be considered on appeal.

ID.—APPLICATION TO PORTO RICO OF FEDERAL EMPLOYERS' LIABILITY ACT OF JUNE 11, 1906.—The pleadings of the complaint in this case being insufficient upon which to apply the Federal Employers' Liability Act of June 11, 1906, it is unnecessary to decide whether or not said Federal statute is applicable to Porto Rico and the effect that may have been produced in regard to the validity of this law in the Territories of the United States by the declaration of the Supreme Court of the United States regarding the unconstitutionality of the act in so far as relates to interstate commerce. (*El Paso and Northeastern Railway Co.* v. *Gutiérrez,* 215 U. S., 87.)

ID.—EMPLOYERS' LIABILITY ACT OF PORTO RICO—INSUFFICIENCY OF COMPLAINT.— In a complaint filed by an employe against his employer to recover damages for injuries received, which, due to the allegations thereof, do not fall within paragraphs 2 and 3 of section 322 of the Revised Statutes of Porto Rico, being therefore governed by paragraph 1 of the same section, and which does not state that the injuries were caused, or not discovered, or not remedied through the negligence of the employer or of any person in his service, does not state facts sufficient to constitute a cause of action in accordance with said law.

ID.—KNOWLEDGE OF DEFECTS OR DANGEROUS CONDITION OF PLACE WHERE WORKING—ACCEPTANCE OF RISK.—Where an employe becomes aware of the dangerous condition of the place wherein he works and of the defects thereof, and continues to work therein after calling his employer's attention thereto, the latter having refused to correct such defects, it is assumed that the employe accepts the risks consequent to the dangerous condition of the place and cannot later, in case of accident, claim damages.

The facts are stated in the opinion.

*Mr. José Tous Soto* for appellant.

*Messrs. E. S. Paine* and *N. B. K. Pettingill* for respondent.

MR. JUSTICE MACLEARY delivered the opinion of the court, and also filed a separate opinion.

The trial in this case was had in the District Court of Ponce on January 20, 1910. Judgment was rendered on April 29 following against the plaintiff on the law and the facts. In his complaint the plaintiff states that the defendant, The New York and Porto Rico Steamship Company, is a corporation chartered in the State of New York, doing business in Porto Rico and engaged in transportation and traffic between the ports of the Island and New York by means of steamships; and he alleges that on June 15, 1909, he was employed by the defendant in the work of unloading one of the steamships of the said company in the harbor of Ponce, and that he was working on the 'tween-deck or hatchway, and that between the upper hatchway and the lower one there was a hatch in the floor which was closed with various planks which, joined together, formed a platform. That one of these planks was too short and did not reach sufficiently far to close up the hatch; that owing to this fact, on the plaintiff passing over it the board gave way, falling to the bottom of the lower hold and dragging the plaintiff with it in its fall; and that he thereby suffered, as a consequence, considerable bruises, which caused him damages to the amount of $999.

The defendant company alleges as its first defense:

1. That the fall of the plank was due to its being improperly placed by the plaintiff himself and his companions, who were his fellow-servants.

2. That the plaintiff suffered no damages in consequence of said fall.

3. That there was no negligence on the part of the defendant company.

The appellant in his brief sets out in his assignment two errors: First. That the District Court of Ponce erred in weighing the evidence and in not taking into consideration the proof that the fall of the plaintiff was due to the negli-

gence of the defendant company. Second. That the trial court erred in dismissing the complaint, the doctrine that the negligence of a fellow-servant is imputable to an employe not being applicable to this case.

The evidence, as set out in the statement of facts, is not very extensive, but is certainly somewhat conflicting. The plaintiff on his own behalf testified that the fall and the consequent injury were caused by the defective condition of some of the planks composing the cover of the hatchway. On the other hand, the mate of the ship testified on behalf of the defendant that the accident was caused, not by any defect in the planks themselves, but by the fact that when a sling had been loaded with sacks of rice and began to be hoisted up some of the planks of the platform were caught by the ropes of this sling and displaced so· that the plaintiff, who was following the sling, stepped into the hole thus made. On several other material points the witnesses for the plaintiff and the defendant, respectively, testified directly contrary to each other, and it is a well-recognized rule established in American jurisprudence and in several decisions of this court that where the evidence is conflicting the conclusions of the trial court will not be disturbed on appeal unless they are clearly wrong or work manifest injustice to the losing party. (*Morales* v. *Central Machete*, II Castro, 603, and cases there cited.) We cannot therefore say that the trial court erred in the consideration of the evidence and in not holding that the fall of the plaintiff was due to the negligence of the defendant company.

We will therefore pass on to the second assignment, which is based on the ground, as alleged, that the doctrine of the fellow-servant is not imputable to this plaintiff, he being an employe of the defendant. It is contended in this connection by the plaintiff, who is the appellant here, that the Federal Employers' Liability Act, passed on June 11, 1906, is applicable to this case. This position was probably an afterthought, for it does not appear from the record that this

question was raised in the court below. But this matters not; it can be brought forward here and now. The counsel for respondent in his final argument here frankly admits that this act of Congress is the law, and that wherever a complaint states the facts which are necessary to the applicability of this statute in a case between employes and employers in the courts of this Island, it becomes exclusively applicable without special mention of the act in the pleadings. This is clearly the plain effect of the decision in the case of *El Paso & Northeastern Railway Co.* v. *Gutiérrez, Admx.,* 215 U. S., 87. That case in the opinion discussed the first Federal act hereinbefore mentioned as enacted in 1906, and held that although it had been declared unconstitutional by the Supreme Court, as far as it involved interstate commerce, the statute was nevertheless valid and applicable to other kinds of commerce. This act, as stated, had been held by the Supreme Court of the United States in the year 1907 to be unconstitutional, at least in so far as it referred to interstate commerce. (See Employers' Liability Cases, 207 U. S., 463. See also *Atchison R. R. Co.* v. *Mills,* a Texas case, 108 S. W. Rep., 480.) But it is stated by Mr. Justice Day in the opinion in the Gutiérrez case delivered on behalf of the Supreme Court of the United States on November 15, 1909, that:

"This court did not in its decision of the Employers' Liability Cases, 207 U. S., 463, hold the act of June 11, 1906, c. 3073, 34 Stat., 232, unconstitutional so far as it related to the District of Columbia, and the Territories, and expressly refused to interpret the act as applying only to such employes of carriers in the District and Territories as were engaged in interstate commerce." (*El Paso & N. E. Ry.* v. *Gutiérrez,* 215 U. S., p. 88.)

Whatever effect this decision might have in regard to the validity of this statute in the Territories of the United States, it is not necessary to decide that question in this case in so far as Porto Rico is concerned, the allegations in the complaint not being sufficient; therefore we leave that ques-

tion open, to be decided when necessary. However, the plaintiff is entitled to the benefit of the Insular act defining the relations between employers and employes and is bound by its terms. (See Rev. Stats. of Porto Rico, sec. 322 *et seq.*, pp. 150 *et seq.*)

The complaint shows from its allegations that the relation of master and servant, or employer and employe, existed between the parties, and alleges that plaintiff was, at the moment of the accident, in the exercise of due care; but it fails to allege any negligence of the defendant corresponding to any of the provisions of either of the three subheads of section 322 of the Insular statute. Subheads 2 and 3 treat of negligence on the part of defendant's agents. There is no mention of, or reference to, any agent in the complaint, so the subhead to be applied is that numbered 1. This refers to "defects in the condition of the ways, works, or machinery connected with or used in the business of the employer." Holding that a hatch cover, being one of the necessary appliances employed in the business of the defendant, comes within the description used in the statute under the name of "machinery," it must be observed that the act is further limited in its terms by the words which follow those above quoted, "which arose from or had not been discovered or remedied owing to the negligence of the employer or of any person," etc. As there is no allegation pretending to state by whose negligence this defective condition or placing of the planks on the cover of the hatchway "arose or had not been discovered or remedied," it must be taken that the complaint thereby fails to state a case coming within the Employers' Liability Act of Porto Rico.

The liability of the plaintiff for the acts or omissions of his fellow-servants does not necessarily arise in this case; and, under the view which we take of the facts and the law applicable to them, it is unnecessary to follow this thread longer in this discussion. It will be time enough to determine how far the doctrine of fellow-servants has been modi-

fied by the Insular act concerning the liability of employers in some other case involving that question directly.

It is indisputable that it was the duty of the defendant to furnish his employe, the plaintiff in this case, with a safe place for him in which to work, and had the plaintiff shown himself blameless in the premises, he might, had be brought himself within the statute by proper allegations, possibly have recovered. But by his own admission he was aware of the defects in the platform before the accident occurred. He especially says through his counsel that he and his companions and fellow-servants called the attention of the ship's mate to the bad condition of the planks which formed the platform, and that the officer ordered the gang to continue the work, alleging that the planks were in good condition, saying "Good, good, go ahead." It is true that the mate himself denies that he had his attention called to the condition of the platform, but the foreman of the gang in his testimony supports the witnesses of the plaintiff. Nevertheless, after calling the attention of the mate to the dangerous condition of the hatchway and of the planks composing the platform covering it, and after his refusal or neglect to have the defects remedied, or to promise to do so later, the plaintiff and his fellow-servants went on with the work without further protest, thereby assuming the risk which they incurred in working on a defective platform. It is well established that although the employe is not obliged to pass judgment upon the employer's method of transacting business, and has a right to assume that reasonable care will be used in furnishing safe appliances such as are necessary to carry on the business, still this rule is subject to the exception that where the defect is known to the employe, or is so patent as to be readily observed by him and other persons, he cannot with impunity continue to use the defective apparatus in the face of such knowledge and without calling the attention of his employer thereto and making his objections.

If the employe does so, he assumes the risk incident to

such a situation. In other words, if he knows of the defect and continues in the master's service without calling attention thereto or making any objection to the defect, he is taken to have elected to continue in the employ of the master at his own risk notwithstanding the defect, and if any accident occurs thereby he cannot recover damages therefor. (*Choctaw, etc., R. R. Co.* v. *McDade,* 191 U. S., 64.)

Mr. Justice Van Devanter, who has recently taken a seat upon the Supreme Bench of the United States, while he was a circuit judge, used the following language in regard to a case somewhat like the present:

"But it is said that his participation in the staking of the car was not voluntary because it was at the direction of his superior officer, the conductor. The premise is correct, but the conclusion does not follow. The deceased knew and appreciated the danger, and in that respect stood upon an equal footing with the conductor. Yet he complied with the latter's direction without objection when he could have complied or not as he chose. The law adjudges such action to be voluntary. It is well settled that where a servant knows and appreciates the danger of the act which he undertakes he does not any the less assume the risk of injury, or become chargeable with contributory negligence, as the case may be, because he undertakes it under the direction of the master's representative." (*Chicago Great Western Ry. Co.* v. *Crotty,* 141 Fed., 913.)

The appellant cannot avoid the force of this decision by saying that he called the attention of the mate to the defective condition of the platform which covered the hatchway. This excuse might have been available to him if the mate, on having his attention called to the defect, had promised to repair the same; but he did not do so, and in fact virtually refused to remedy the defect or even to promise to do so, contending that there was no danger and that the platform was in good condition; and the mate not having taken any steps or made any promise to repair or avoid the defect, no question arises as to whether or not the ship's officers had any opportunity to make the repairs. The plaintiff

knew of the danger and the defendant refused to remedy the defects which had been pointed out, or to make any promise in regard thereto, thereby throwing upon the employe the alternative that he must either refuse to continue working in the dangerous place as he found it or he must take the risks of the defects and perils to which he had called attention. There is nothing in these views which, in our opinion, is contrary to the provisions of section 8 of the Insular Employers' Liability Act when fairly construed. (See Rev. Stats. of Porto Rico, sec. 329, p. 155.)

In a well-known case which came up from the Court of Appeals of the District of Columbia, the Supreme Court of the United States makes the following remarks:

"The plaintiff had had experience in the kind of business in which he was engaged at the time of his injury. He recognized, from the beginning, the peril to which he was exposed while working at the gravel bank. There was no express undertaking, upon the part of the district, by its supervisor, that it would save him harmless as to any injury he might suffer prior to the designation of some one to watch the bank; and it was not implied in the contract between him and the District that he might needlessly or rashly expose himself to danger. On the contrary, if liability might come upon the District for the negligence of its officers controlling his services, he was under an obligation to exercise due care in protecting himself from personal harm while discharging duties out of which such liability might arise. If he failed to exercise such care; if he exposed himself to dangers that were so threatening or obvious as likely to cause injury at any moment, he would notwithstanding any promises or assurances of the district supervisor of the character alleged, be guilty of such contributory negligence as would defeat his claim for injuries so received." (*District of Columbia* v. *McElligott,* 117 U. S., 621.)

Then, we may repeat, that inasmuch as the plaintiff, by his own testimony, shows that he knew of the defects existing in the hatchway and in the platform which covered it, and the consequent dangers by which he was surrounded, and continued working in the unsafe place without any steps

taken or even any promise on the part of his employer to remedy the defect, the plaintiff thereby assumed the risk of any danger which might be lurking in his way; and when the incident occurred, under the circumstances, he had no right to claim any obligation on the part of the defendant to make good the damage which he may have suffered. So it is that had the allegations of the complaint allowed us to apply the provisions of the Insular statute governing the relations between employers and employes, the plaintiff could not recover thereunder.

Taking these views of the questions involved, it is unnecessary to go into the other aspects of the case. Neither of the errors assigned by the appellant can avail him, not being sustained by the record. Such being the case, the judgment rendered by the trial court should be affirmed.

*Affirmed.*

Chief Justice Hernández and Justices Wolf, del Toro, and Aldrey concurred.

SEPARATE OPINION DELIVERED BY MR. JUSTICE MACLEARY
MAY 6, 1911.

The opinion delivered in this case on yesterday was the official opinion of the court—that is to say, the one in which all of the members of the court agreed—and, although written by me, in one particular it does not meet my hearty concurrence. There is no hesitation among the members of the court over the question of the affirmance of the judgment of the court below, all agreeing to our judgment rendered to that effect. But in regard to the paragraph reading: "Whatever effect this decision might have in regard to the validity of this statute in the Territories of the United States, it is not necessary to decide that question in this case in so far as Porto Rico is concerned, the allegations in the complaint not being sufficient; therefore we leave that question open to be decided when necessary." Some of us—at least I—do not con-

cur. The question was clearly raised by the appellant in his brief as to the applicability of the Federal Statutes to his case as presented here. On that point we say in the opinion filed yesterday: "This position was probably an afterthought for it does not appear from the record that this question was raised in the court below. But this matters not; it can be brought forward here and now. The counsel for respondent, in his final argument here, frankly admits that this act of Congress is the law, and that wherever a complaint states the facts which are necessary to the applicability of this statute, in a case between employes and employers in the courts of this island, it becomes exclusively applicable without special mention of the act in the pleadings." The question had been under consideration from the date of the filing of appellant's brief herein on October 15, 1910. After the first hearing on January 17 last, we thought that matter, and some others, of sufficient importance to order a new hearing on several questions submitted for the argument of counsel. The order reads as follows:

"In view of the importance of the legal questions involved in the decision of this case, it is ordered that the same be set down for reargument, orally and by brief, on the following points, to wit:

"First. What application, if any, have the Employers' Liability Acts, passed by Congress and the Insular Legislature, to the facts presented in the record?

"Second. Does it appear from the facts of this case that the employe assumed the risks and the dangers incident to his employment?

"Third. What obligation was the employer under to furnish the employe in this case a safe place wherein to work?

"Fourth. What other questions, if any, are pertinent to the consideration of this matter?

"This case is accordingly set down for a rehearing on April 3, 1911, at 2 o'clock p. m."

This rehearing was had on April 3 last, and the constitutionality, force, and vigor of the statute was conceded. And it was only after the question had been under considera-

tion for more than 28 weeks that any doubt was suggested in regard to the matter. These doubts were urged with such persistency that finally in order to arrive at any decision in the case a modification of the opinion was necessary. For my own part, I never for a moment doubted that the distinguished counsel on both sides of this case, who conceded the validity of the statutes and their applicability in Porto Rico, were right in the conclusion which they had reached after months of study and two hearings in this court, with an interval of 76 days between them.

In my opinion, it was the plain duty of this court to decide this question one way or the other, especially since on our decision in regard to that point depended the right of the appellant to take an appeal to the Supreme Court of the United States. (Sec. 35 of the Organic Act.) Moreover, it is for the best interests of the Island that the law in force here should be definite and certain; and it should not be left as a doubtful matter whether or not any Federal statute is in force among our people. The courts of the Island, and last of all the Supreme Court, should never be the ones to raise doubts about the laws under which our people have to live and by which their rights and obligations are determined. Neither the Supreme Court of the United States, nor the bar practicing therein, nor the bar of Porto Rico, seemed to have any doubt on the subject. Then why should we raise a doubt and then fail to solve it? Is this the part of wisdom or patriotism? I think not. Believing it then to be the plain duty of this court to say whether or not the Federal statutes in regard to the liability of employers to their employes were in force in Porto Rico, I originally wrote three paragraphs into the opinion of the court, reading as follows:

"Under this decision we must hold this Federal act governing the relations between certain employers and employes to be in force in Porto Rico as well as in other Territories of the United States.

"After this first act was held to be—at least in some measure—

unconstitutional, the Congress of the United States passed a new act on the same subject on April 22, 1908. (See Statutes-at-Large of the United States, chapter 149.) This act superseded the prior act, at least in regard to common carriers *by railroad,* and being upon the same subject matter and covering the whole question, repeals by implication the first-mentioned law in so far as the two are contradictory or inconsistent, but no further. (*Tracy* v. *Tuffly,* 134 U. S., 223; *United States* v. *Tynen,* 11 Wall., 88 and 95; *Cook County Nat. Bk.* v. *United States,* 107 U. S., 445; *Norris* v. *Crocker,* 13 How., 429; *Bartlett* v. *King,* 12 Mass., 537; *Commonwealth* v. *Cooley,* 10 Pick., 36; 37 Mass., *Commonwealth* v. *Kimball,* 21 Pick., 376; 38 Mass; *Pierpont* v. *Crouch,* 10 Cal., 315; Southerland on Stat. Constr., pp. 207 and 208; *Guerra* v. *The Treasurer of Porto Rico* [8 P. R., 280], decided by Supreme Court of Porto Rico, April 7, 1905. See Federal Statutes Ann., vol. 1, p. 584, note on p. 586.)

"The latter act, as shown in its title, applies to common carriers by railroad only. This fact renders it inapplicable to the present case and the plaintiff herein cannot claim the benefit of this statute. The first-mentioned act being by its terms applicable and restricted to common carriers and their employes, an allegation is necessary in the complaint declaring that the defendant is a common carrier. No such statement appears therein; and there is nothing in the record to show such to be the case. We cannot go beyond the record for information of this nature. The defendant may be a common carrier or a private carrier, and the complaint should state the facts necessary to bring the case within the purview of the Federal statute if he desires to claim the protection thereof."

These observations seemed to meet the approval of the court, but, before the judgment was finally signed, doubts were found to arise among some of my colleagues, and these paragraphs were suppressed.

As well as I could understand the supposed origin of those doubts, they arose from the belief that possibly those statutes might be locally inapplicable in Porto Rico. I am at a loss to find anything in the statutes themselves to indicate that such were the views of Congress when the acts were passed. Nor can I find anything in the decisions of the Supreme Court justifying the view that it may have been the idea prevalent in that august tribunal that Porto Rico

was excluded from the protection of those statutes. Let us examine the authorities.

Under the decisions made by the Supreme Court of the United States, the Employers' Liability Act of 1906 was clearly applicable to the Territories and, as far as it related to them, constitutional. (The Employers' Liability Cases, 207 U. S., 463–541; El Paso & Northeastern Ry. Co. v. Gutié-rrez, 215 U. S., 87.)

To the same effect is the brilliant opinion of Chief Justice Shepard of the Court of Appeals of the District of Columbia in Hyde v. Southern Ry. Co., 31 App. D. C., 466.

Then why is it not in force in Porto Rico? It is suggested that it is or may be "locally inapplicable." Under section 14 of the Organic Act, all acts of Congress not "locally inapplicable" are declared to "have the same force and effect in Porto Rico as in the United States." What is there in the substance of this act of Congress which would render it "locally inapplicable?" Search is made in vain through all its sections for anything making it so, and an examination of all the decisions of this and all the Federal courts is alike vain in any endeavor to find such a view taken, or supported by any judge.

As early as the year 1879 the Supreme Court of the United States settled the power of Congress to legislate for the Territories. Speaking through the Chief Justice, then the Hon. M. R. Waite, the court says:

"All territory within the jurisdiction of the United States not included in any State must necessarily be governed by or under the authority of Congress. The Territories are but political subdidisions of the outlying dominion of the United States. Their relation to the general government is much the same as that which counties bear to the respective States, and Congress may legislate for them as a State does for its municipal organizations. The organic law of a Territory takes the place of a constitution as the fundamental law of the local government. It is obligatory on and binds the territorial authorities; but Congress is supreme, and for the purposes of this department of its governmental authority has all the

powers of the people of the United States, except such as have been expressly or by implication reserved in the prohibitions of the Constitution.

"In the organic act of Dakota there was not an express reservation of power in Congress to amend the acts of the territorial legislature, nor was it necessary. Such a power is an incident of sovereignty, and continues until granted away. Congress may not only abrogate laws of the territorial legislatures, but it may itself legislate directly for the local government. It may make a void act of the territorial legislature valid, and a valid act void. In other words, it has full and complete legislative authority over the people of the Territories and all the departments of the Territorial governments. It may do for the Territories what the people, under the Constitution of the United States, may do for the States." (*National Bank* v. *County of Yankton*, 101 U. S., 133.)

But it is or may be suggested that Porto Rico is not a "Territory" of the United States within the purview of the Employers' Liability Act. Why not? In the Roman Catholic Church case, discussing the applicability of the act of July 30, 1886, which enacted certain prohibitions against the "legislatures of the Territories," the law was held inapplicable, not because Porto Rico was not included in the word "Territories," but because that act was superseded by the special provision of the Foraker Act. Chief Justice Fuller, on behalf of the court, in regard to this matter, said:

"But such general prohibitions have no application where specific permission to the contrary is granted by the organic act applying to the *particular Territories.*"

Later in the opinion the Chief Justice continues:

"The Porto Rican act under consideration merely repeats the action of Congress in the past in organizing other Territories." (*Ponce* v. *Roman Catholic Church*, 210 U. S., 296, 307, 308.)

This opinion was written in 1907 and clearly treats Porto Rico as a Territory of the United States to which the general legislation of Congress applies.

And in the next year the same eminent jurist, speaking for the same high tribunal, maintains the same juridical posi-

tion in a well-known case where the question was the application of a statute enacted long before the Spanish war, which provided that fugitives from justice could be demanded "of the executive authority of any State or Territory to which such person has fled," etc. The Chief Justice, in closing his opinion in that case, said:

"It may be justly asserted that Porto Rico is a completely organized Territory, although not a Territory incorporated into the United States, * * *." (*State ex rel. Kopel v. Bingham,* 211 U. S., 468, 476.)

And in the prior part of the same opinion the court adopts as a definition of the word "territory," as used in Congressional legislation, the following:

"A portion of the country not included within the limits of any State, and not yet admitted as a State into the Union, but organized under the laws of Congress with a separate legislature under a territorial governor and other officers appointed by the President and Senate of the United States." (*Kopel v. Bingham,* 211 U. S., 475.)

This definition is applied to this Island, and if it was correctly so applied, then Porto Rico is one of the Territories which the Employers' Liability Act of 1896 was intended to affect. If the first act applies to Porto Rico, then the second does also, as it is merely amendatory of the former and is limited to common carriers *by railroad.* No doubt on this subject can longer linger in the most vacillating mind.

It is to be hoped that this court will embrace the earliest opportunity to settle any doubts and uncertainties which the hesitation exhibited in the opinion rendered yesterday may cause to arise in the minds of the bar and other persons interested in this question, and that we may accept the responsibilities placed on our shoulders by the laws of our country and discharge all our duties to the country and its people without further hesitation and delay.